**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MAUREEN LYNN ARMITAGE,

                Plaintiff,

vs.                                           Case No. 3:17-cv-1122-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Maureen Lynn Armitage ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of arthritis, degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), and emphysema. See Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed December 13, 2017, at 70, 83, 196. Plaintiff filed an application for DIB on April 11, 2014,[2] alleging an onset disability date of April 8, 2014. Tr. at 155. The application was denied initially, Tr. at 70-80, 81, 94, 95-97, and upon reconsideration, Tr. at 82, 83-93, 101-05, 106.

---

      [1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 9), filed December 13, 2017; Reference Order (Doc. No. 11), entered December 14, 2017.

      [2]     Although actually completed on April 11, 2014, see Tr. at 155, the protective filing date of the application is listed elsewhere in the administrative transcript as April 10, 2014, see, e.g., Tr. at 70, 83.

On July 20, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 30-69. Plaintiff was fifty-six years old at the time of the hearing. See Tr. at 33 (indicating date of birth). The ALJ issued a Decision on September 21, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-25.

The Appeals Council then accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. 274-76 (brief). On August 11, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On October 5, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) "[t]he ALJ's [residual functional limitation ('RFC')] finding is contrary to law and not supported by substantial evidence; he acknowledged Plaintiff's use of a cane, but failed to create a 'logical bridge' to the RFC finding, which omits any cane-related limitation"; and 2) the ALJ's evaluation of Dr. Marichris Zahnle's[3] Medical Source Statement was erroneous. Plaintiff's Memorandum - Social Security (Doc. No. 14; "Pl.'s Mem."), filed February 12, 2018, at 4 (emphasis omitted), 11; see Pl.'s Mem. at 4-11 (first argument), 11-24 (second argument). In making her second argument, Plaintiff also contends the ALJ erred in giving significant weight to the opinion of the state agency consultant, Dr. Barry Bercu. Pl.'s Mem. at 22-23. On April 2, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15;

---

[3] Dr. Zahnle conducted a one-time examination of Plaintiff on November 4, 2014. See Tr. at 588-90.

"Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry through step four, where the inquiry ended based on the ALJ's finding at that step. See Tr. at 15-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 8, 2014, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: osteoarthritis, degenerative disc disease of the lumbar spine, and [COPD]." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with no more than occasional bending, stooping, kneeling, crouching, crawling, and climbing stairs and ramps. [Plaintiff] cannot climb ladders/ropes/scaffolds. [Plaintiff] is limited to frequent gross handling. [Plaintiff] should avoid concentrated exposure to dusts, fumes, gases, poor ventilation, and wetness.

Tr. at 17 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as a Cashier II and Management Trainee." Tr. at 23 (emphasis omitted); see Tr. at 23-24. The ALJ did not make an alternative finding regarding the fifth step. The ALJ concluded that Plaintiff "has not been under a disability . . . from April 8, 2014, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is

reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

For ease of discussion, the undersigned addresses Plaintiff's argument regarding the ALJ's evaluation of Dr. Zahnle's and Dr. Bercu's opinions, see Pl.'s Mem. at 11-24, and then Plaintiff's assertion that the ALJ failed to include cane-related limitations in the RFC, see id. at 4-11.

**A. Dr. Zahnle's and Dr. Bercu's Opinions**

Plaintiff contends the ALJ erred in giving little weight to Dr. Zahnle's opinions in the Medical Source Statement that Plaintiff "can sit for 1 hour at a time or less than 2 hours in an 8-hour workday; stand for 1 hour at a time or less than 2 hours in an 8-hour workday; . . . needs frequent position changes[; and she] can lift less than 10 pounds occasionally, and never more than 10 pounds." Id. at 12-13 (citations omitted). Plaintiff argues that "the ALJ gave no obvious consideration to the fact that Dr. Zahnle actually examined Plaintiff." Id. at 16 (citation omitted). Plaintiff asserts that the ALJ also failed to "acknowledge that Dr. Zahnle's opinion was supported by and consistent with the evaluation from Ivelisse Herrera, PT, who also performed a functional capacity evaluation on November 4, 2014 on referral from Dr. Zahnle." Id. (citation omitted). According to Plaintiff, the ALJ "did not even acknowledge" that Dr. Zahnle is a physiatrist and Ms. Herrera is a physical

therapist. Id. at 17. Plaintiff asserts the ALJ erred in failing to recognize that because Dr. Zahnle is "affiliated with the Veterans Affairs [('VA')] Medical Center where Plaintiff received her medical treatment, [she] had full access to her treatment history and other examinations by treating physicians . . . ." Id. Plaintiff lastly contends that "the ALJ's assertion of inconsistency between the opinion and the other evidence of record is simply inaccurate." Id.

As to Dr. Bercu's opinion, Plaintiff asserts that the ALJ erred in relying on the state agency reviewer, Dr. Bercu, because Dr. Bercu's "assessment was issued prior to the opinion of Dr. Zahnle, prior to [Ms. Herrera's] functional capacity evaluation, and without benefit of the records demonstrating a significant worsening of her condition, to the point that she needed support when walking." Id. at 23 (citations omitted).

Responding, Defendant argues that the ALJ did acknowledge that Dr. Zahnle examined Plaintiff; he "specifically noted that Dr. Zahnle saw and examined Plaintiff – only for one assessment . . . ." Def.'s Mem. at 13-14 (citation omitted). Defendant contends Plaintiff's assertion that Dr. Zahnle had full access to Plaintiff's treatment records is "an interesting and creative assertion on the part of Plaintiff, but there is absolutely no evidence or fact to support Plaintiff's claim that Dr. Zahnle had 'full access' to Plaintiff's treatment history before completing [her] Medical Source Statement, much less that [s]he reviewed it." Id. at 14 (citation omitted). As to Plaintiff's argument that Ms. Herrera's evaluation is consistent with Dr. Zahnle's Medical Source Statement, Defendant contends that the ALJ discussed Ms. Herrera's findings and that Ms. Herrera is not an acceptable medical source. Id. at 17.

Regarding Dr. Bercu's opinion, Defendant argues that "the ALJ did not rely solely on or blindly defer to Dr. Bercu's opinion and properly considered Dr. Bercu's opinion together with the other evidence in assessing Plaintiff's RFC." Id. at 18 (citations omitted).

The Regulations[5] establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claim, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d

---

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, Dr. Zahnle examined Plaintiff on November 4, 2014. See Tr. at 588-90.[8] The administrative record contains Dr. Zahnle's notes, dated November 4, 2014 and signed November 6, 2014, regarding the examination, as well as a Medical Source Statement completed by Dr. Zahnle, dated November 11, 2014. See Tr. at 588-90 (examination notes), 591-93 (Medical Source Statement).

According to Dr. Zahnle's examination notes, Plaintiff was "able to ambulate functionally"; she was "independent" in her activities of daily living; and she had "5/5 strength" in the upper and lower extremities, intact sensation, normal reflexes, normal cervical range of motion, and a negative straight-leg-raising test ("SLR"). Tr. at 588-89. Dr. Zahnle noted that Plaintiff had "no significant deviation" in gait and that she had "good" balance. Tr. at 589. She observed that Plaintiff's lumbar range of motion was "self[-]limited by report of pain." Tr. at 589. She also noted Plaintiff presented with no "acute musculoskeletal/neurologic deficits." Tr. at 590.

In the Medical Source Statement, Dr. Zahnle opined Plaintiff could sit for one hour at a time; could stand for one hour at a time; could sit for less than two hours during an eight-hour workday; and could "stand/walk" for less than two hours during an eight-hour workday. Tr. at 592. She opined that Plaintiff did not need a cane or other assistive device "[w]hile engaging in occasional standing/walking" and that Plaintiff could only occasionally lift less than ten pounds. Tr. at 592. She stated Plaintiff had "5/5 strength," "good balance," normal gait, and normal reflexes. Tr. at 591.

---

[8] The administrative transcript contains multiple duplicates of medical records. The Court does not cite duplicates in this Opinion and Order.

On September 8, 2014, Dr. Bercu opined in substance that Plaintiff can perform light work[9] with no more than occasional climbing of ladders/ropes/scaffolds and that she should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. Tr. at 89-91.

The ALJ summarized in detail Dr. Zahnle's opinions in the Medical Source Statement, and he assigned "partial weight" to them. Tr. at 23. The ALJ explained as follows:

> [Dr. Zahnle's] opinion regarding lifting limitations and severe sit, stand, and walk limitations are inconsistent with [her] examination notes showing relatively benign exam findings. [She] further opined that [Plaintiff] did not need a cane for ambulation or unscheduled breaks, which was consistent with [her] examination findings.

Tr. at 23 (citation omitted).

As to Dr. Bercu's opinion, the ALJ gave it "significant weight" and stated as follows:

> [Dr. Bercu's opinion] is consistent with the examination findings showing no strength or sensation loss and no neurological deficits. Examinations also largely showed a normal gait, with the exception of the one-time kinesiotherapy consultation, where she received a cane, and a March 2016 examination where she was noted to have a slow gait. Even at the time of the kinesiotherapy consultation, she was noted only to have modified independence in ambulation (scaled at 6/7, with 7 being completely independent). Dr. Bercu's opinion regarding avoidance of concentrated exposure to pulmonary irritants is consistent with her history of COPD. However, in light of her more recent complaints of thumb pain and the diagnostic imaging showing bilateral thumb osteoarthritis, the undersigned finds that she is further limited to frequent gross handling.

Tr. at 22 (citations omitted).

The undersigned finds no error in the ALJ's evaluation of Dr. Zahnle's and Dr. Bercu's opinions. With regard to Dr. Zahnle, substantial evidence supports the ALJ's finding that Dr. Zahnle's opined limitations are inconsistent with her own examination findings. Tr. at 23; see

---

[9] Dr. Bercu does not specifically state Plaintiff is limited to light work, but the opined limitations in his assessment are consistent with the definition of light work in the Regulations. Compare 20 C.F.R. §§ 404.1567(b), 416.967(b) (stating, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds") with, Tr. at 89 (opining Plaintiff can occasionally lift and/or carry up to 20 pounds and can frequently lift and/or carry up to 10 pounds).

Tr. at 588-90 (Dr. Zahnle's examination notes indicating Plaintiff was "able to ambulate functionally"; she was "independent" in her activities of daily living; she had "5/5 strength" in the upper and lower extremities, intact sensation, normal reflexes, normal cervical range of motion, and negative SLRs; she had "no significant deviation" in gait; she had "good" balance; and she presented with no "acute musculoskeletal/neurologic deficits").

Plaintiff's contention that the ALJ did not consider that Dr. Zahnle examined Plaintiff, Pl.'s Mem. at 16, is incorrect. The ALJ specifically noted that Plaintiff "presented to [Dr. Zahnle] for a one-time physical evaluation for the purpose of . . . completing a work disability form." Tr. at 20. Although the ALJ did not specifically state that Dr. Zahnle is a physiatrist and Ms. Herrera is a physical therapist, these omissions are harmless. As noted above, the ALJ's weighing of Dr. Zahnle's opined limitations is supported by substantial evidence, and it is clear the ALJ properly considered Dr. Zahnle's opinions. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (citing Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)). As to Ms. Herrera, she is a physical therapist, so she is not an acceptable medical source. See 20 C.F.R. § 404.1513(a).[10] Further, as explained below, the ALJ properly considered Ms. Herrera's opinion.

---

[10] As noted above, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). The new regulations do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017. In any event, physical therapists are not considered acceptable medical sources under the new regulations either. See id. at 5846; 20 C.F.R. § 404.1502(a).

As to Plaintiff's assertion that Dr. Zahnle had full access to Plaintiff's treatment records, Dr. Zahnle's examination notes indicate she was familiar with diagnostics from September 2012 and a March 2014 CT scan, as well as Plaintiff's then-current medications. See Tr. at 588-89. Although the ALJ did not specifically make this observation in the Decision, as noted above, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer, 395 F.3d at 1211. Further, Plaintiff presents no evidence, nor can the Court find any, that Dr. Zahnle reviewed any treatment records from the VA that would support her opined limitations.

The undersigned now turns to Plaintiff's argument that the ALJ failed to acknowledge that Ms. Herrera's opinions support Dr. Zahnle's opinions. The ALJ discussed Ms. Herrera's opinions that Plaintiff is limited to sedentary work, has a leg lift capacity of zero pounds, and has a torso lift capacity of zero pounds, but he mistakenly attributed these opinions to Dr. Zahnle. Tr. at 20 (Decision); Tr. at 586 (Ms. Herrera's opinion). This error, however, is harmless. The ALJ specified he gave "little weight to [Ms. Herrera's] summary statement that [Plaintiff] is able to work at the sedentary physical demand level" on the grounds that it is "inconsistent with [Dr. Zahnle's] examination findings, [Plaintiff's] conservative treatment, [Plaintiff's] failure to follow-up with pain management, and her fairly normal physical examinations with the VA." Tr. at 22. These reasons are supported by substantial evidence. Tr. at 19-22 (ALJ's summary of the medical evidence); see, e.g., Tr. at 383-85 (May 2014 treatment notes indicating Plaintiff had normal gait, no abnormalities of the head or neck, 5/5 strength in all extremities, no numbness or tingling, mild tenderness to palpation in cervical

spine "around C5," and negative SLR); Tr. 380-81 (May 2014 progress note indicating Plaintiff failed to appear for appointment, and when Plaintiff called to make another appointment, "she stated she would call when she wants an appointment"); Tr. at 495-96 (August 2014 treatment note indicating Plaintiff reported her shoulder pain level was 5/10, she was using a TENS unit, she had equal hand grasps, she had full movement in her fingers, she "declined to come for further [physical therapy] due to cost of gas," and she was able to lift her arms overhead 180 degrees without pain, but her left arm abduction was painful); Tr. at 726 (October 2014 treatment note referring Plaintiff to physical therapy, continuing her current medications, and advising her to use TENS unit on shoulder); Tr. at 646-47 (February 2016 treatment note indicating Plaintiff was independent in activities of daily living, she had normal sensation, and her dexterity was within functional limits). But see Tr. at 383-85 (May 2014 treatment note indicating Plaintiff had limited lumbar range of motion); Tr. at 665 (September 2015 treatment note indicating Plaintiff's gait was antalgic and Plaintiff was prescribed cane). Moreover, Ms. Herrera's opinion is conclusory and refers to "detailed results" in a functional capacity evaluation that is not part of the record. See Tr. at 586.

With regard to Dr. Bercu's opinion, the undersigned finds that although the opinion was issued before Dr. Zahnle's Medical Source Statement, Ms. Herrera's opinions, and other more recent medical records, the ALJ did not err in assigning it significant weight. As Defendant points out, the ALJ "did not rely solely on or blindly defer to Dr. Bercu's opinion." Def.'s Mem. at 18. The ALJ considered the evidence as a whole and found that Dr. Bercu's opinion was consistent with the largely normal medical findings in the record. See Tr. at 22.

This finding is supported by substantial evidence. See supra pp. 13-14 (discussion of medical evidence).

**B. RFC and Cane-Related Limitations**

Plaintiff contends that "[t]he ALJ acknowledged the existence of the cane-related evidence, but [he] neglected to make any finding regarding the use of an assistive device for ambulation, and failed to account for the need for the cane in the RFC." Pl.'s Mem. at 6. According to Plaintiff, "[t]he evidence demonstrates that Plaintiff needs a cane, uses a cane, and was prescribed a cane, and the ALJ failed to present any explanation or evidence to the contrary." Id. at 7. Plaintiff asserts that "[t]his error is patently harmful in this case, because the [VE] testified that the need to use a cane to stand and ambulate would preclude the performance of Plaintiff's past relevant work as a cashier II and management trainee because these occupations would require high manual dexterity." Id. (citation omitted).

Responding, Defendant contends that "[t]he ALJ clearly considered the overall evidence when assessing Plaintiff's RFC, including Plaintiff's appearance during the hearing with a cane and her testimony that she has been using this cane 'on and off' for approximately three years." Def.'s Mem. at 19 (citation omitted). Further, argues Defendant, the ALJ "noted that the medical records do not support Plaintiff's assertion that she medically needs a cane to ambulate." Id. (citation omitted). Thus, according to Defendant, "the ALJ clearly did not accept that Plaintiff needed a cane and did not incorporate any such limitation in his RFC assessment." Id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a

claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the undersigned finds no error in the ALJ's decision to not include cane-related limitations in the RFC. In formulating the RFC, the ALJ discussed the evidence of record, including medical evidence, Plaintiff's subjective complaints, and Plaintiff's activities of daily living. See Tr. at 18-22. The ALJ specifically observed that Plaintiff was prescribed a cane in September 2015, used a cane for ambulation at a March 2016 annual exam, and had a cane at the hearing. See Tr. at 18, 21; Tr. at 665 (September 2015 treatment note indicating Plaintiff was prescribed cane); Tr. 873-74 (March 2016 treatment note indicating Plaintiff "uses cane for ambulation"); Tr. at 41 (hearing testimony). The ALJ also correctly noted that Dr. Zahnle opined in November 2014 that Plaintiff did not need a cane for ambulation. Tr. at 20; see Tr. at 592 (Dr. Zahnle's opinion). The ALJ observed that Plaintiff's "[p]hysical examinations have been fairly benign; [Plaintiff] has no loss of strength, no sensation loss, and no neurological deficits." Tr. at 22. The ALJ also observed that the administrative transcript "documents only conservative treatment," and Plaintiff "has not had treatment with specialists, nor was surgery recommended." Tr. as 22. According to the ALJ, Plaintiff "did not

participate in any prolonged physical therapy," and in August 2014, she "declined physical therapy because gas was too expensive." Tr. at 22; see Tr. at 495-96 (August 2014 treatment note). Upon review of the administrative transcript, the above findings are supported by substantial evidence. See supra pp. 13-14 (discussion of evidence).

In light of the above, the ALJ correctly found that the use of a cane was not medically necessary and properly concluded that "the evidence is consistent with the ability to perform light work." Tr. at 22. In light of the above, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 12, 2019.

*JAMES R. KLINDT*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record

-17-